# EXHIBIT B

NYSCEF DOC. NO. 2

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------X

JOSE ABREU, SERGIO DE LOS
SANTOS, RONALD DEJESUS
VICTOR FERMIN, LUIS NUNEZ PERALTA,
ANGEL RIVERA, RENEE RODRIGUEZ
and DIONICIO ESTRELLA                                   Index No.:     26532/2017E

                Plaintiffs,

        vs.
FAIRWAY MARKET LLC,
FAIRWAY GROUP HOLDINGS, CORP,                           **SUPPLEMENTAL SUMMONS**
FAIRWAY CHELSEA, LLC
FAIRWAY UPTOWN, LLC, FAIRWAY                            The basis of the venue designated is:
WOODLAND PARK LLC and FAIRWAY                           Plaintiff Jose Abreu's residence
STAMFORD, LLC
                Defendants,

------------------------------------------------------------X

To the above named defendants:

     **YOU ARE HEREBY SUMMONED** to answer the Amended Verified Complaint in this

action and to serve a copy of your answer, or, if the complaint is not served with this summons,

to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated: New York, New York
       November 9, 2017

                           THE CLANCY LAW FIRM, P.C.

                           DONNA H. CLANCY
                           Attorney for Plaintiffs
                           40 Wall Street, 61st Floor
                           New York, New York 10005
                           (212) 747-1744

NYSCEF DOC. NO. 2

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

To:    Fairway Market, LLC
2284 12th Avenue,
New York, New York

Fairway Group Holdings, Corp.
2284 12th Avenue,
York, New York

Fairway Chelsea, LLC
2284 12th Avenue
New York, New York

Fairway Uptown, LLC
2284 12th Avenue
New York, New York

Fairway Woodland Park, LLC
1510 U.S. Route 46 West,
Woodland Park, New Jersey

Fairway Stamford, LLC
699 Canal Street
Stamford, Connecticut

NYSCEF DOC. NO. 2

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF BRONX

Index No.: 26532/2017E

-------------------------------------------------------------------------------

JOSE ABREU, SERGIO DE LOS SANTOS, RONALD DEJESUS, VICTOR FERMIN, LUIS NUNEZ PERALTA,  ANGEL RIVERA, RENEE RODRIGUEZ and DIONICIO ESTRELLA

Plaintiffs,

-against-

FAIRWAY MARKET LLC,  FAIRWAY GROUP HOLDINGS, CORP, FAIRWAY CHELSEA, LLC, FAIRWAY UPTOWN, LLC, FAIRWAY, WOODLAND PARK LLC, FAIRWAY STAMFORD, LLC, ABC CORPORATIONS and JOHN DOES 1-10.

Defendants.

-------------------------------------------------------------------------------

## SUPPLEMENTAL SUMMONS

-------------------------------------------------------------------------------

### THE CLANCY LAW FIRM, P.C.

Attorneys for Plaintiffs
40 Wall Street – 61st Floor
New York, New York 10005
(212) 747-1744

-------------------------------------------------------------------------------

To Service of a copy of the within is hereby admitted.

Dated: -------------------20-----

Attorneys for

-------------------------------------------------------------------------------

PLEASE TAKE NOTICE:

NOTICE OF ENTRY                                                that
the within is a (certified) true copy of an Order duly entered
in the office of the clerk of the within named court

NOTICE OF SETTLEMENT                                          that
and order   of which the within is a true copy will be presented for settlement to the HON.  one of the
judges of the
within named Court, at
On                     20    at              M.
Dated,
Yours, etc.

-------------------------------------------------------------------------------

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------X

JOSE ABREU, SERGIO DE LOS
SANTOS, RONALD DEJESUS
VICTOR FERMIN, LUIS NUNEZ PERALTA,
ANGEL RIVERA, RENEE RODRIGUEZ
and DIONICIO ESTRELLA

                     Plaintiffs,

      vs.

FAIRWAY MARKET LLC,
FAIRWAY GROUP HOLDINGS, CORP,
FAIRWAY CHELSEA, LLC
FAIRWAY UPTOWN, LLC, FAIRWAY
WOODLAND PARK LLC, FAIRWAY
STAMFORD, LLC, ABC CORPORATIONS
and JOHN DOES 1-10.

                Defendants,

------------------------------------------------------X

Index No.: 26532/2017E

**AMENDED
VERIFIED COMPLAINT**

        Plaintiffs JOSE ABREU, SERGIO DE LOS SANTOS, RONALD DEJESUS, VICTOR

FERMIN, LUIS NUNEZ PERALTA, ANGEL RIVERA, RENEE RODRIGUEZ, DIONICIO

ESTRELLA, by way of complaint, state:

## NATURE OF THE ACTION

     1.     This is an action for injunctive relief, declaratory judgment and money damages

to remedy discrimination on the basis of race, color, national origin and disability in the terms,

conditions and privileges of employment under the New York State Human Rights Law, New

York State Exec. Law, §296 *et seq.* ("NYSHRL") New York City Human Rights Law as contained

in the Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL"); The New York

Labor Law §190, §215; §740 and other applicable statutes. Plaintiffs seek monetary and declaratory relief for their individual and collective claims.

2.      This action arises from the same and/or similar set of facts and circumstances and is being brought to vindicate the human and civil rights of Plaintiffs.  Plaintiffs contend that the terms, conditions and privileges of their employment relationship with Defendants, FAIRWAY MARKET, LLC, FAIRWAY GROUP HOLDINGS, CORP., FAIRWAY CHELSEA, LLC and FAIRWAY UPTOWN, FAIRWAY WOODLAND PARK, LLC and FAIRWAY STANFORD, LLC (collectively herein as "FAIRWAY") were adversely affected, and created a hostile work enviornment in part, because of their race, color and/or national origin and/or disability and/or workplace injuries and in retaliation for their complaints of discrimination. Plaintiffs further contend that they were subject to adverse treatment in retaliation for reporting perceived violations of law by Defendants and were deprived wages and other benefits in violation of applicable statutes all of which entitle them to compensatory and punitive damages.

## JURISDICTION AND VENUE

3.      A substantial part of the acts giving rise to this action were committed within the State and City of New York, and venue is properly lodged in this Court. Plaintiff Jose Abreu resides in the County of Bronx and State of New York.

## PROCEDURAL REQUIREMENTS

4.      Prior to commencement of this action, Plaintiff served a copy of the complaint upon the New York City Commission of Human Rights and the Corporation Counsel of the City of New York in accordance with New York City Administrative Code Section 8-502(c).

-2-

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

## PARTIES

5.    Plaintiff Jose Abreu (referred to herein as Plaintiff "Abreu") is a Hispanic male of Dominican origin, residing at 1585 White Plains Road, City of New York, County of Bronx, State of New York.

6.    Plaintiff Sergio De Los Santos (referred to herein as Plaintiff "Santos") is a Hispanic male of Dominican origin, residing at 100 Washington St. APT. #4M, City of Hempstead, County of Nassau, State of New York.

7.    Plaintiff Ronald DeJesus (referred to herein as Plaintiff "DeJesus") is a Hispanic male of Dominican origin, residing at 4C Hudson Street APT 1, City of Passaic, County of Passaic, State of New Jersey.

8.    Plaintiff Luis Nunez Peralta (referred to herein as Plaintiff "Nunez") is a Hispanic male of Dominican origin, residing at 74 East 27th Street APT 3, City of Patterson, County of Passaic, State of New Jersey.

9.    Plaintiff Angel Rivera (referred to herein as Plaintiff "Rivera") is a Hispanic male of Puerto Rican origin, residing at 10 Howard PL., City of Jersey City, County of Hudson, State of New Jersey.

10.    Plaintiff Renee Rodriguez (referred to herein as Plaintiff "Rodriguez") is a Hispanic male of Dominican origin, residing at 515 14th Ave 1st Floor, City of Patterson, County of Passaic, State of New Jersey.

11.    Plaintiff Victor Fermin (referred to herein as Plaintiff "Fermin") is a Hispanic male of Dominican origin, residing at 115 22nd Avenue, City of Patterson, County of Passaic, State of New Jersey.

- 3 -

INDEX NO. 26532/2017E

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 11/09/2017

12.      Plaintiff Dionicio Estrella (referred to herein as Plaintiff "Estrella") is a Hispanic male of Dominican origin, residing at 1315 Amsterdam Avenue, Apt. 12E, New York, New York 10027.

13.      Upon information and belief, Defendant Fairway Market, LLC, (referred to herein as "Fairway Market") is a domestic corporation authorized to conduct business in the state of New York.

14.      Upon information and belief, Defendant Fairway Market is a foreign corporation transacting business in the state of New York.

15.      Upon information and belief, Defendant Fairway Market is a limited liability company transacting business in the State of New York.

16.      Upon information and belief, Defendant Fairway Market derives substantial revenue from food and other goods sold and consumed in the state of New York.

17.      Upon information and belief, Defendant Fairway Market operates as a chain of supermarkets selling food and other goods to consumers in the state of New York.

18.      Upon information and belief, Defendant Fairway Market has its principal place of business at 2284 12th Avenue, New York, New York.

19.      At all relevant times, Defendant Fairway Market is an Employer with the meaning of NYSHRL §292(6) because Defendant Fairway Market has four (4) or more persons in its employ and conducts business in the State and City of New York.

20.      At all relevant times, Defendant Fairway Market is an Employer within the meaning of NYC Administrative Code §§ 8-102(5) because Defendant has four (4) or more persons in its employ and conducts business in the State and City of New York.

- 4 -

INDEX NO. 26532/2017E

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 11/09/2017

21.     Upon information and belief, Defendant Fairway Holdings Corp. is a domestic corporation authorized to conduct business in the state of New York.

22.     Upon information and belief, Defendant Fairway Holdings Corp. is a foreign corporation transacting business in the state of New York.

23.     Upon information and belief, Defendant Fairway Holdings Corp. derives substantial revenue from food and other goods sold and consumed in the state of New York.

24.     Upon information and belief, Defendant Fairway Holdings Corp. owns, controls, manages, administers, and operates subsidiaries and companies including and in particular, Defendants Fairway Market LLC, Fairway Chelsea LLC, Fairway Uptown LLC and Fairway Woodland Park LLC, (collectively herein as Defendant Fairway) as a chain of supermarkets selling food and other goods to consumers.

25.     Upon information and belief, Defendant Fairway Holdings Corp. has its principal place of business at 2284 12th Avenue, New York, New York.

26.     At all relevant times, Defendant Fairway Holdings Corp. is an Employer within the meaning of NYSHRL §292(6) because Defendant Fairway Market has four (4) or more persons in its employ and conducts business in the State and City of New York.

27.     At all relevant times, Defendant Fairway Holdings Corp. is an Employer within the meaning of NYCHRL §8-102(5) because Defendant Fairway Market has four (4) or more persons in its employ and conducts business in the State and City of New York.

28.     Upon information and belief, Defendant Fairway Chelsea LLC is a domestic corporation authorized to conduct business in the state of New York.

- 5 -

29.    Upon information and belief, Defendant Fairway Chelsea LLC is a foreign corporation transacting business in the state of New York.

30.    Upon information and belief, Defendant Fairway Chelsea LLC is a limited liability corporation transacting business in the State of New York.

31.    Upon information and belief, Defendant Fairway Chelsea LLC derives substantial revenue from food and other goods sold and consumed in the state of New York.

32.    Upon information and belief, Defendant Fairway Chelsea LLC operates as a subsidiary supermarket of Defendant Fairway Holdings Corp. and/or Defendant Fairway Market LLC., selling food and other goods to consumers in the State of New York.

33.    Upon information and belief, Defendant Fairway Chelsea LLC has its principal place of business at 2284 12th Avenue, New York, New York.

34.    At all relevant times, Defendant Fairway Chelsea LLC., is an Employer with the meaning of NYSHRL §292(6) because Defendant Fairway Chelsea has four (4) or more persons in its employ and conducts business in the State and City of New York.

35.    At all relevant times, Defendant Fairway Chelsea LLC., is an Employer with the meaning of NYCHRL §8-102(5) because Defendant Fairway Chelsea has four (4) or more persons in its employ and conducts business in the State and City of New York.

36.    Upon information and belief, Defendant Fairway Uptown LLC is a domestic corporation authorized to conduct business in the state of New York.

37.    Upon information and belief, Defendant Fairway Uptown LLC is a foreign corporation transacting business in the state of New York.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

38.     Upon information and belief, Defendant Fairway Uptown LLC is a limited liability company transacting business in the state of New York.

39.     Upon information and belief, Defendant Fairway Uptown LLC derives substantial revenue from food and other goods sold and consumed in the state of New York.

40.     Upon information and belief, Defendant Fairway Uptown LLC operates as a subsidiary supermarket of Defendant Fairway Holdings Corp. selling food and other goods to consumer in the State of New York.

41.     Upon information and belief, Defendant Fairway Uptown LLC has its principal place of business at 2284 12th Avenue, New York, New York.

42.     At all relevant times, Defendant Fairway Uptown LLC is an Employer with the meaning of NYSHRL §292(6) and NYCHRL §8-102(5) because Defendant Fairway Market has four (4) or more persons in its employ and conducts business in the State and City of New York.

43.     Upon information and belief, Defendant Fairway Woodland Park LLC is a domestic corporation authorized to conduct business in the state of New Jersey.

44.     Upon information and belief, Defendant Fairway Woodland Park LLC is a foreign corporation transacting business in the state of New York.

45.     Upon information and belief, Defendant Fairway Woodland Park LLC derives substantial revenue from food and other goods sold and consumed in the state of New York.

46.     Upon information and belief, Defendant Fairway Woodland Park LLC has its principal place of business at 1510 U.S. Route 46 West, Woodland Park, New Jersey.

- 7 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

47.    Upon information and belief, Defendant Fairway Holdings Corp. has the ultimate right to approve of the hiring, promoting and/or dismissal of its employees including and in particular, the employees of Defendants Fairway Market LLC, Fairway Chelsea LLC and Fairway Uptown LLC, Fairway Woodland Park LLC and Fairway Stamford LLC.

48.    Upon information and belief, Defendant Fairway Market LLC has the ultimate right to approve of the hiring, promoting and/or dismissal of its employees, including and in particular, the employees of Fairway Holdings Corp., Fairway Chelsea LLC and Fairway Uptown LLC, Fairway Woodland Park, LLC and Fairway Stamford, LLC.

49.    At all relevant times, Defendants Fairway employed the Plaintiffs herein.

50.    At all relevant times, Plaintiffs' daily work was supervised by Defendants Fairways, their agents, servants and/or employees.

51.    At all relevant times, all employees were required to follow Defendants Fairway's employment policies and procedures to comply with all anti-discrimination, harassment, retaliation and/or labor law statutes, to provide protection for their employees.

## PLAINTIFF JOSE ABREU

52.    In or about 2011, Plaintiff Abreu became employed by Defendants Fairway as a Butcher at their Harlem, New York City location.

53.    Upon information and belief, Plaintiff Abreu received a starting salary of $18.00 an hour for a 40 hour work week. Plaintiff was a member of the Union local 1262.

54.    In or about 2013, Plaintiff Abreu was promoted to Deli Manager and received an increased salary rate of $24.80 per hour.

- 8 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

55.  As Deli Manager, Plaintiff's duties included quality control of the products he sold in the Deli.

56.  During the course of his employment, Plaintiff Abreu made internal complaints about the store manager not properly disposing of expired meats that were being sold to Fairway customers of the supermarket.

57.  Shortly after his complaint, Plaintiff's manager began harassing and retaliating against Plaintiff Abreu.

58.  As a result of his internal complaint, Plaintiff Abreu was demoted from his Deli Manager position, and his salary decreased to $18.00 per hour.

59.  Following his complaint and demotion, Plaintiff Abreu was transferred to and from more than five (5) of Defendants Fairway's Stores.

60.  On or about January 19, 2015, Plaintiff Abreu was transferred to the New York City Chelsea Location and came under the supervision of Fairway's manager Omar Johnson.

61.  On or about February 3, 2015, Plaintiff Abreu began inventory of his department at 5:00 a.m. Once he completed inventory, Plaintiff was required to fax his documentation to the Store Manager David Bland. Approximately 10 minutes after Plaintiff Abreu faxed the paperwork, he was called by his manager Mr. Johnson to resend the fax.

62.  At that time, he was working in the Deli and cutting meat. Abreu stopped what he was doing and did what Mr. Johnson asked of him. When he returned from faxing the documents, Mr. Johnson wrote Plaintiff up for allegedly leaving the knife out behind the counter. However, such a practice was not uncommon by other employees nor in violation of any written policies or procedures.

-9-

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

63.     At all relevant times, Plaintiff complied with Defendants Fairway's attendance and/or sick leave policies.

64.     On or about April 4, 2015, Plaintiff Abreu emailed Mr. Johnson that he would not be able to work because he was sick.

65.     On or about April 5, 2015, Plaintiff returned to work with a doctor's note in compliance with Defendants' policies. When Plaintiff gave his note to Mr. Johnson, Mr. Johnson wrote him up.

66.     Because Plaintiff Abreu complied with Defendants Fairway's policies, Plaintiff Abreu refused to sign the write up.  Mr. Johnson threatened Abreu that the next time he refused to sign the write up he would suspend Plaintiff.

67.     During the course of his employment, constant harassment and daily verbal abuse that included racist remarks about Dominicans were made towards Plaintiff by his supervisor, Mr. Johnson.

68.     As a result, in or about March 2016, Plaintiff Abreu suffered a panic attack during his shift and was placed on disability until on or about April 1, 2016.

69.     Plaintiff Abreu returned to work on April 1, 2016 and was told that the schedule was already made and he was not on it.

70.     Plaintiff Abreu complained to Defendants Fairway's Human Resources, who advised him that he was going to be transferred to a store located in Long Island more than 100 miles away from his home and was required to work the closing shift until 10 p.m., despite Plaintiff Abreu having consistently worked the morning shift for the last six (6) years.

- 10 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

71.     Plaintiff Abreu was warned by Human Resources that if he refused to show up to the Long Island location, he would no longer have a job.

72.     As a result of Defendants' retaliatory action taken against him, Plaintiff Abreu filed a grievance with the Union.

73.     As a result of the grievance proceeding, the Union was able to get Plaintiff transferred to a Fairway store closer to his home.

74.     Plaintiff Abreu's supervisors, David Peter, Keith Beltran and Omar Johnson continued to retaliate against him by changing his schedule and/or taking away his overtime days that enabled him to increase his earnings.

75.     Specifically, Defendants Fairway's General Manager, Keith Beltran transferred Plaintiff Abreu to at least two (2) Fairway store locations within a one year time frame.

76.     Defendant Fairway's managers, David Peter, Keith Beltran and Omar Johnson continued to verbally abuse Plaintiff Abreu using racist derogatory terms and remarked that they "were not going to hire any more Dominicans".

77.     On May 1, 2017, Plaintiff Abreu was cutting meat on a grinder.

78.     While using the meat cutter, a piece of meat got stuck inside of it and when Plaintiff Abreu went to remove it the machine sliced Plaintiff's finger.

79.     Plaintiff was bleeding heavily and instead of calling an ambulance the General Manager, instructed another employee to drive Plaintiff to a clinic.

80.     At the clinic, Plaintiff did not receive proper care and was just bandaged and sent home. However, Plaintiff did not stop bleeding for several days as no sutures were administered.

- 11 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

81.     Plaintiff continues to work in fear every day of losing his job and being financially unable to support himself and his family.

82.     Due to the constant harassment, verbal abuse, and hostile work environment, Plaintiff Abreu was forced to seek psychiatric counseling to manage his stress and anxiety and is still continuing his treatment.

## PLAINTIFF SERGIO DE LOS SANTOS

83.     In or about September 2013, Plaintiff became employed in the meat department at the Plainview, New York location under his direct supervisor, Israel Ortiz.

84.     In February 2014, Plaintiff was transferred and promoted to Manager of the meat department at the Westbury, New York store.

85.     In or about May 2015, Plaintiff complained about expired meat that was being sold to customers to Defendants Fairway Manager, Keith Nash.

86.     During the course of his employment, Plaintiff De Los Santos made internal complaints about the store manager's not properly disposing of expired meats that were being sold to customers of the supermarket.

87.     Shortly following his complaint, Plaintiff's Manager, Nash began harassing and retaliating against Plaintiff De Los Santos.

88.     In 2016, Plaintiff requested time off for the birth of his son who was born on March 19, 2016 but was denied leave in violation of Defendant's employment policies.

89.     During the course of his employment, constant harassment and daily verbal abuse that included racist remarks about Dominicans continues to date towards Plaintiff from his supervisor, at Defendants' Fairway stores.

- 12 -

## PLAINTIFF RONALD DEJESUS

90.    In or about 2011, Plaintiff DeJesus became employed by Defendants Fairway as a butcher at their Woodland Park, New Jersey location.

91.    Upon information and belief, Plaintiff DeJesus had previously worked at BJs Deli Department as a Manager for 9 years and had sufficient experience and skills to perform his job duties.

92.    Upon information and belief, Plaintiff DeJesus received a starting salary of $18.00 per hour from Defendants Fairway.

93.    Shortly after Plaintiff began working, he came under the supervision of Defendants Fairway Manager, Danny Ariza.

94.    Two years after he became employed, in or about January 2013, Defendant Fairway lowered Plaintiff DeJesus' salary to $9.25 without justification.

95.    As a result, in or about January 31, 2013, Plaintiff DeJesus filed a grievance with the Union, United Food and Commercial (UFCW) Local 1262 and the Union representatives who, after a period of time, were able to reinstate his salary back to $18.00 per hour.

96.    At all relevant times, Plaintiff DeJesus' worked the day shift beginning at 6 a.m. and ending at 2:00 p.m.

97.    Defendant Fairway's manager was made aware that Plaintiff DeJesus was enrolled in evening classes at Farleigh Dickinson University in New Jersey.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

98.    Defendant Fairway's manager refused without justification to permit Plaintiff DeJesus to leave his employment on time on a regular basis to attend his classes which began at 6:00 p.m. and refused to reimburse him for books and other student expenses under Defendants Fairways' employment policies which provided for reimbursement.

99.    On or about March 29, 2013, Plaintiff DeJesus filed a grievance with the Union against his manager's unfair treatment of him. The Union intervened and negotiated on his behalf that Defendants Fairway and his manager would accommodate and maintain his schedule.

100.    In retaliation, Defendants Fairway manager, Danny Ariza changed Plaintiff's schedule from the day shift to the night shift.

101.    Thereafter, Defendants Fairway manager, Danny Ariza continued his retaliatory acts by, *inter alia* assigning Plaintiff DeJesus "to-do" lists that were impossible to finish during his shift and refused to allow Plaintiff to leave until all of the tasks were completed.

102.    On various occasions during his employment, Plaintiff DeJesus was suspended for allegedly failing to complete the tasks randomly assigned by his Manager, Mr. Ariza.

103.    On or about May 4, 2013, Plaintiff filed a grievance with the Union that his manager was forcing him to choose between school and work. Plaintiff was forced to withdraw from Farleigh Dickinson University because he was threatened with being fired and he needed to financially provide for his family.

- 14 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

104.     As a result of Plaintiff's filing of grievances, Plaintiff DeJesus was harassed on a daily basis and retaliated against by the Defendants Fairway manager, Danny Ariza. Mr. Ariza made racist comments to Plaintiff DeJesus and other Dominican workers calling them "stupid", "trash", "drug addicts", "good for nothing", which Plaintiff found offensive, insulting and intimidating.

105.     On or about December 1, 2013, Plaintiff DeJesus filed another grievance with the Union for the severe harassment and discrimination he was experiencing over an extended period of time.

106.     As a result of the Defendants Fairway's manager's ongoing harassment that consisted of hostile and racist comments, reducing his wages, assigning of a greater number of tasks outside of normal job duties and altering his work schedule, Plaintiff experienced extreme stress that resulted in physical symptoms including, but not limited to, heart palpitations, shortness of breath, anxiety, panic attacks and difficulty sleeping.

107.     On or about October 19, 2013, Plaintiff DeJesus consulted with a cardiologist who prescribed a 24-hour heart monitor and medication. Defendants Fairway manager, Mr. Ariza mocked him in front of his coworkers, telling everyone that he had a "bomb" on.

108.     On or about November 21, 2013, Danny Ariza assaulted Plaintiff DeJesus by pushing his chest and telling him to "stay away for his own protection." Plaintiff DeJesus reported this to Defendants Fairway's, Manager Drew Testa.  Mr. Testa advised Plaintiff that he would review the store cameras to investigate. However, Mr. Testa failed to view the video and Plaintiff was never apprised of the results of the investigation of the assault committed against him by his

- 15 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

manager during work.

109.    Upon information and belief, Defendants Fairway did not discipline train or counsel Mr. Ariza.

110.    On or about November 27, 2013, Plaintiff DeJesus advised his manager Danny Ariza that he needed to take his heart medication at certain times throughout the day. In front of workers, Mr. Ariza mocked Plaintiff for needing to take medication.

111.    In or about 2014, Plaintiff DeJesus came under psychiatric care due to the ongoing stress, anxiety, and harassment experienced during his employment with Defendants Fairway.

112.    Plaintiff DeJesus' psychiatrist wrote and delivered to Defendant Fairway various medical notes explaining Plaintiff's medical condition and medications and requested accommodations pertaining to Plaintiff's work schedule on his behalf.

113.    Defendants Fairway failed to provide a reasonable accommodation for Plaintiff DeJesus' disability and forced Plaintiff to work under hostile work conditions.

114.    On or about June 24, 2015, Plaintiff complained to his Union Representative, Mr. Jamie Feimster about the continued discrimination, harassment, physical and mental abuse he experienced at work.

115.    In retaliation, Defendants Fairway General Manager Michael Albergo, (White male) suspended Plaintiff DeJesus without pay and threatened termination. After filing a grievance, Plaintiff was further retaliated by the Floor Manager, Charlie who poked Plaintiff hard in the chest multiple times complaining that Plaintiff was not doing his job.

- 16 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

116.    On September 11, 2015, Plaintiff called his Union and reported that the Floor Manager Charlie had aggressively poked him in the chest.

117.    On September 21, 2015, during the grievance meeting with the Union, Plaintiff requested that the camera tape in the meat department be shown to evidence the physical abuse and ongoing harassment. However, Defendant Fairway's General Manager, Mr. Albergo refused to display any of the tapes and no discipline was given to the Floor Manager Charlie.

118.    Defendants Fairway by its managers, continued to harass, discriminate and retaliate against Plaintiff Dejesus on a daily basis.

119.    In October 2016, Defendants Fairway terminated Plaintiff under the pretext that he had been written up three times. Plaintiff complained again to the Union who obtained his reinstatement with two weeks pay. Upon returning to work, Plaintiff requested his two weeks pay and was denied.

120.    As a result of the Defendants Fairway discriminatory and retaliatory treatment, Plaintiff was constructively discharged and did not return to work in October 2016 and never received his pay.

## PLAINTIFF VICTOR FERMIN

121.    On or about August 9, 2013, Plaintiff Victor Fermin became employed at the Fairway Paramus store as a cook.

122.    During his employment, Plaintiff Fermin was harassed by managers and coworkers who made racist remarks.

- 17 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

123.    On or about February 11, 2015, Plaintiff Fermin was working in the salad bar section. Assistant Manager, Duane McCasky, (White male) requested Plaintiff to work at another work station to cover an employee who was out, in addition to his station.

124.    When Plaintiff Fermin requested direction on how he was going to complete the work of both stations at the same time, Manager McCasky became verbally abusive and assaulted him by striking Plaintiff's chest with his chest. A coworker, Kenneth Harris witnessed the assault and got in between Mr. McCasky and Plaintiff. Despite Mr. Harris confirming the assault by Mr. McCasky upon Plaintiff, Plaintiff was suspended without pay by the General Manager, Mr. Albergo while, no discipline was given to Mr. McCasky.

125.    As a result, Plaintiff complained to the Union who interviewed Mr. McCasky and Plaintiff was reinstated to work.

126.    Over the course of the last two years, Plaintiff continues to experience harassment and retaliation as a result of his race and national origin and complaints of unfair treatment on a regular basis.

## PLAINTIFF LUIS NUNEZ PERALTA

127.    On or about January 15, 2009, Plaintiff Peralta became employed by Defendants Fairway in the Specialty Grocery Department at the Paramus, New Jersey store location.

128.    At all relevant times, Plaintiff Peralta's duties consisted of stocking shelves and packing boxes at the Paramus store.

129.    On or about December 19, 2010, Plaintiff Peralta was carrying out his usual duties when he was lifting a box of "Boylan" sodas down from the shelf when he felt severe pain in his lower spine. An ambulance was called, and he was rushed to Valley Hospital, NJ.

- 18 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

130.    At the hospital, Plaintiff Peralta was given an injection to his spine and was told that he could return to work after two days.

131.    After two days, Plaintiff Peralta returned to work still experiencing pain. However, for fear of losing his job or retaliation for filing a workers' compensation claim, Plaintiff continued to work with extreme pain. His manager gave him a back brace to assist him perform his duties during work.

132.    Plaintiff Peralta's back condition continued to worsen over the next several years.

133.    In April 2014, Plaintiff Peralta requested permission to utilize his vacation days for medical treatment in the Dominican Republic for his back condition that resulted from the 2010 work related accident.

134.    On July 19, 2014, Plaintiff Peralta requested a disability leave for six weeks to receive necessary medical treatment in the Dominican Republic.

135.    Defendants Fairway manager, denied his request for medical leave.

136.    As a result, Plaintiff complained to the Union that he was being discriminated against because of his work related injury and need for medical treatment.

137.    Upon return from medical leave for his treatment in the Dominican Republic, Defendants Fairway terminated Plaintiff for "job abandonment".

## PLAINTIFF ANGEL RIVERA

138.    On or about March 29, 2012, Plaintiff Rivera, Hispanic male of Puerto Rican descent became employed by Defendants Fairway as a part-time deli clerk at the Paramus, New Jersey location.

- 19 -

139.    Upon hire, Plaintiff Rivera received a starting salary of $15.50 per hour.

140.    In June 2012, Plaintiff Rivera was transferred and promoted to Woodland Park's Deli Manager.

141.    In July 2012, Plaintiff Rivera received a salary increase to $18.25 hourly and then to $21.00 per hour.

142.    Thereafter, in 2012, Plaintiff Rivera became the Union Shop Steward for the Woodland Park and Paramus Stores.

143.    As a result, Plaintiff was retaliated against by Defendants' managers Michael Albergo and Ed Burke for representing his coworkers in union grievances.

144.    On March 16, 2013, General Manager, Michael Albergo suspended Plaintiff Rivera without pay for allegedly permitting expired meat to be sold to customers in the amount of $140.00. However, other White managers were caught previously permitting more than $3000.00 in expired meat to be sold to customers without any discipline.

145.    Upon returning to work on April 2, 2013, Plaintiff was demoted from Deli Manager and transferred to Fairway's meat department with a reduction in salary to $9.00 hour in violation of Union Rules and pay schedules and in comparison to similarly situated coworkers outside of Plaintiff's protected class.

146.    In or about July 2014, Plaintiff Rivera was transferred to the Paramus store where Plaintiff continued to experience and witness racial discrimination against Hispanic workers.

147.    On July 1, 2015, Plaintiff witnessed various Hispanic workers being harassed by Defendants Fairway managers and being unfairly treated in comparison to workers outside the protected class. As a result, Plaintiff complained in writing to the Union regarding the hostile work

- 20 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

environment and unfair treatment especially to the Dominican workers.

148.     By letter dated July 1, 2015, to Union Representative for Local 1262, Plaintiff Rivera complained about the unfair treatment to the Hispanic workers at Woodland Park on at least three separate occasions that involved Ronald DeJesus, Renee Rodriguez and Victor Fermin. Plaintiff Rivera complained that these Hispanic employees have been bullied, physically assaulted and verbally abused. Plaintiff further complained that the store manager favors non-Hispanic workers and refuses to take disciplinary action against those workers who have physically and emotionally abused the Hispanic workers.

## **PLAINTIFF RENEE RODRIGUEZ**

149.     On or about April 6, 2012, Plaintiff Rodriguez became employed by Defendants Fairway as a Dish Washer in the Produce Department at the Paramus, New Jersey location. His direct supervisor was Ed Burk.

150.     At that time of hire, Plaintiff Rodriguez was offered and accepted $10.50 per hour for the position of dish washer.

151.     However, after Plaintiff began working Defendant Fairway paid Plaintiff Rodriguez a lower salary of $8.50 per hour.

152.     Plaintiff Rodriguez earned less money than his non-Hispanic coworkers with less experience with the same position.

153.     As a result, Plaintiff Rodriguez complained to his supervisor, Mr. Burk about the salary difference. Mr. Burk responded by saying "if you are not satisfied with the salary, there is the door."

- 21 -

154.    Shortly after this incident regarding the pay reduction, Plaintiff Rodriguez requested to be transferred to Defendant Fairway's Woodland Park, New Jersey location.

155.    However, once transferred to the Woodland Park store, Defendants Fairways' managers harassed Plaintiff on a daily basis with racist comments and similar adverse action affecting the terms and conditions of his employment.

156.    While working at Defendants Fairway's Woodland Park store, Plaintiff Rodriguez's manager, Roland Briceno made racist and derogatory comments about Dominicans. Specifically, Mr. Briceno remarked that Dominicans were "lazy" and "good for nothing."

157.    On various occasions, Mr. Albergo directed Plaintiff Rodriguez to complete tasks that were outside the scope and training of his position as a dish washer. For example, Mr. Albergo directed Plaintiff Rodriguez to drive an electric pallet truck to move merchandise in the store, a task for which he was not trained.

158.    On or about April 9, 2014, Plaintiff Rodriguez was directed to drive the pallet truck. As a result of Plaintiff's lack of training, Plaintiff sustained a fracture to his right foot on the job.

159.    Instead of coming to Plaintiff's aid, Mr. Albergo ignored Plaintiff's physical complaints and remarked that Plaintiff Rodriguez was "faking his injury".

160.    As a result of Plaintiff's work related injury, he filed a workers' compensation claim and was out of work for a period of time.

161.    After returning to work, Plaintiff experienced a heightened level of hostility from his manager and non-Hispanic coworkers, creating a hostile work environment that interfered with his ability to properly perform his job duties.

- 22 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

162.    On or about December 29, 2014, Plaintiff Rodriguez was finishing his line of dishes and on his way to throw away garbage when he was physically assaulted by another co-worker, Dustin Knolmaye, White male.

163.    Although Mr. Knolmaye was initially suspended Defendants Fairway's managers returned Mr. Knolmaye to work before the Union hearing to determine his discipline.

164.    Mr. Knolmaye was not a member of the Union yet was given benefits of being a member in terms of progressive discipline and otherwise afforded preferential treatment in comparison to Plaintiff and members of Plaintiff's protected class.

165.    Plaintiff Rodriguez asked Mr. Albergo why his aggressor was allowed to return to work, and Mr. Albergo responded "if you have a problem with my decision I will report it to Human Resources and send you home." Upon information and belief, Mr. Knolmaye and Mr. Albergo are cousins.

166.    On or about May 3, 2015, Plaintiff Rodriguez suffered a back injury while working and picking up a box of melons when he slipped and fell and the box fell on top of him.

167.    Again, Defendants' Fairway manager, Mr. Albergo ignored Plaintiff Rodriguez's physical complaints.

168.    Plaintiff Rodriguez was denied workers compensation benefits for his injury and forced to use all of his sick and vacation days to recover from for his injury.

169.    On or about November 11, 2015, Michael Albergo entered the bathroom stall that Plaintiff Rodriguez was using, to invade Plaintiff's privacy and intimidate him.

170.    Defendants Fairway, by its managers continued creating and permitting a hostile work environment.

- 23 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

171.    As a result, on December 27, 2015, Plaintiff Rodriguez suffered a panic attack and was placed on disability until March 28, 2016.

172.    On March 28, 2016, when Plaintiff Rodriguez tried to return to work, he was told that he was not in the payroll system and to return to his Fairway store the next day.

173.    On March 29, 2016, Plaintiff Rodriguez followed these instructions and returned to work at 6:00 a.m. At approximately 10:53 a.m., he was told to clock out of work and wait until he received a phone call from Human Resources representative, Erica Peterson.

174.    At approximately 1:22 p.m., on March 29, 2016, Ms. Peterson called Plaintiff Rodriguez and notified him that he was being transferred back to the Paramus, New Jersey location to work in the Kosher Kitchen department despite Plaintiff Rodriguez not having or being offered any training or experience to work in that department.

175.    As instructed, Plaintiff Rodriguez reported to work at the Paramus, New Jersey location and came under the supervision of Defendants Fairway manager, Kevin Garrett. Mr. Garrett was aware of Plaintiff Rodriguez's back injury but still forced him to carry heavy merchandise to and from the store's refrigerator and work longer hours from 5:00 a.m. until 5:00 p.m., 6 days out of the week. This physical abuse and failure to accommodate Plaintiff's back injury continued for more than 6 months.

176.    When Plaintiff Rodriguez complained to Mr. Garrett about the 72 hour work week, Mr. Garrett threatened Plaintiff Rodriguez with suspension or told him to "go home."

177.    Due to the constant harassment, verbal abuse, and hostile work environment, Plaintiff Rodriguez was forced to seek psychiatric care to manage his stress and anxiety and continues to undergo treatment.

- 24 -

## PLAINTIFF DIONCIO ESTRELLA

178.    On or about September 27, 2007, Plaintiff Estrella became employed by Defendants Fairway in the Specialty Grocery Department at the Harlem, New York store location.

179.    At all relevant times, Plaintiff Estrella was hired and worked as a butcher at the Deli Department.

180.    Plaintiff Estrella was transferred to various stores in the Bronx and then the Stamford Connecticut location where he was promised to be reimbursed for all mileage, gas and tolls.

181.    Plaintiff Estrella traveled approximately 70 miles daily to and from the Stamford Connecticut store and was only being paid for 40 miles in reimbursement.

182.    On or about September 14, 2016, Plaintiff Estrella was asked to clean the fans located in the deli department, a duty outside of his job description as butcher. While cleaning the fans, cleaning solution fell into Plaintiff Estrella's right eye and he was rushed to the emergency room.

183.    Thereafter, Plaintiff has experienced pain and complications with his right eye requiring medical treatment.

184.    After nearly 10 years of employment from 2007 up until October 2016, Plaintiff was denied his vacation pay.

185.    In or about October 2016, Plaintiff was finally permitted his four weeks' vacation during which he visited his family in the Dominican Republic. He was scheduled return to work on November 14, 2016.

- 25 -

INDEX NO. 26532/2017E
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 11/09/2017

186.    On November 12, 2016, Plaintiff Estrella's father suddenly passed away. Plaintiff Estrella called Fairway to his supervisor, Mr. Barrio that he needed additional time to attend his father's funeral services.

187.    In addition, due to severe weather conditions and flooding in Dominican Republic, all flights leaving the country were cancelled. Plaintiff alerted Fairway and his supervisor, Johnathan Barrio that he would not be able to return to work on the scheduled date.

188.    Upon return from the Dominican Republic, on November 18, 2016, Defendants Fairway terminated Plaintiff Estrella for "job abandonment."

189.    Plaintiff Estrella complained to the Union representative, Theresa Ponte but was advised that Defendants Fairway refused to return him to employment.

190.    Plaintiff filed for unemployment benefits with the Connecticut Department of Labor and which the Defendant Employer, in retaliation, contested Plaintiff's benefits by falsely claiming that he voluntarily quit on November 16, 2016.

191.    The Connecticut Department of Labor held a fact finding hearing which found in Plaintiff's favor for his entitlement to benefits.

192.    Plaintiff Estrella has also witnessed Plaintiff Abreu being harassed by Defendants Fairway managers and being unfairly treated in comparison to workers outside the protected class.

- 26 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

### FIRST THROUGH EIGHTH CAUSE OF ACTION ON BEHALF OF EACH PLAINTIFF INDIVIDUALLY ON THE BASIS OF RACE, COLOR AND NATIONAL ORIGIN UNDER NEW YORK STATE EXECUTIVE LAW § 296

193.    The allegations set forth above in paragraphs "1" through "192" are incorporated herein as if set forth at length.

194.    As stated above, Plaintiff Abreu is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

195.    As stated above, Plaintiff Santos is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

196.    As stated above, Plaintiff DeJesus is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

197.    As stated above, Plaintiff Fermin is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

198.    As stated above, Plaintiff Nunez is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

199.    As stated above, Plaintiff Rivera is a Hispanic dark skinned male of Puerto Rican origin and is therefore a protected employee under New York State Executive Law § 296.

200.    As stated above, Plaintiff Rodriguez is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law § 296.

201.    As stated above, Plaintiff Estrella is a Hispanic dark skinned male of Dominican origin and is therefore a protected employee under New York State Executive Law §296.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

202.    At all relevant times, Defendants maintained a pattern and practice of unlawful discrimination on the basis of race and/or color and/or national origin.

203.    During the time Plaintiffs were employed by Defendants, the Defendant-Employer discriminated against Plaintiffs with respect to the terms, conditions and privileges of their employment because of their race and/or color and/or national origin.

204.    The discrimination consisted of, *inter alia*, Defendants' failure to promote, afford equal terms and conditions of employment, harassment, unfair discipline, offensive racist remarks and disparate treatment by Defendants, through their agents, servants and/or employees toward Plaintiffs.

205.    During the respective periods of Plaintiffs' employment with Defendants, Plaintiffs met and/or were meeting and/or exceeding all of Defendants' legitimate expectations in the performance of their duties.

206.    As a result of the discriminatory treatment, Plaintiffs experienced a hostile work environment based on their race and/or color and/or national origin.

207.    At all relevant times, Defendants have subjected Plaintiffs to harassment that had the effect of unreasonably interfering with Plaintiffs' work performance and creating an intimidating, hostile or offensive work environment that seriously affected Plaintiffs' physical and/or psychological well-being. Plaintiffs were subjected to acts of harassment and discrimination because of their race and/or color and/or national origin.

208.    Defendants' conduct is outrageous and malicious, was intended to injure Plaintiffs and was carried out with reckless indifference to Plaintiffs' protected civil rights, thereby entitling Plaintiffs to punitive damages.

- 28 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

209.    As a result, Plaintiffs are entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorneys' fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York State Executive Law.

### AS AND FOR NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF JOSE ABREU BASED UPON RACE, COLOR AND NATIONAL ORIGIN UNDER NEW YORK CITY ADMINISTRATIVE CODE

210.    Plaintiff Abreu repeats and incorporates the allegations contained in the above paragraphs as if set forth in full herein.

211.    As stated above, Plaintiff Abreu is a Hispanic male and is therefore a protected employee under NYC Administrative Code.

212.    At all relevant times, Defendants maintained a pattern and practice of unlawful discrimination on the basis of race and/or color and/or national origin.

213.    The above stated decisions and policies of Defendants were motivated by considerations of race and/or color and/or national origin and/or were in retaliation for Plaintiffs' complaining of perceived violations of law and/or State regulations.

214.    Based on the foregoing, Plaintiff has been subjected to unlawful discriminatory treatment because of his race and/or color and/or national origin in violation of the New York City Administrative Code.

215.    As a direct consequence of Defendants' violations of the New York City Administrative Code, Plaintiff has suffered substantial economic injury.

- 29 -

INDEX NO. 26532/2017E
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 11/09/2017

216.    As a direct consequence of their violations of the New York City Administrative Code, Defendants are individually liable to Plaintiff for compensatory damages.

217.    Defendants' conduct is outrageous and malicious, was intended to injure Plaintiffs and was carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling Plaintiff to punitive damages.

218.    As a result, Plaintiff is entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorneys' fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York City Administrative Code.

## TENTH THROUGH FIFTEENTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION AND WORK PLACE RELATED INJURIES
## UNDER NEW YORK STATE EXECUTIVE LAW

219.    Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if set forth in full herein:

220.    As stated above, Plaintiff Abreu suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

221.    As stated above, Plaintiff DeJesus suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

222.    As stated above, Plaintiff Fermin is a suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

223.    As stated above, Plaintiff Nunez suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

224.     As stated above, Plaintiff Rodriguez suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

225.     As stated above, Plaintiff Estrella suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law §296.

226.     At all relevant times, Defendants maintained a pattern and practice of unlawful discrimination on the basis of disability and/or work related injury.

227.     During the time Plaintiffs were employed by Defendants, the Defendant-Employer discriminated against Plaintiffs with respect to the terms, conditions and privileges of their employment because of their disability and/or work place injuries.

228.     The discrimination consisted of, *inter alia*, Defendants' failure to promote, afford equal terms and conditions of employment, harassment, unfair discipline, offensive racist remarks, disparate treatment and retaliation by Defendants, through their agents, servants and/or employees toward Plaintiffs.

229.     During the respective periods of Plaintiffs' employment with Defendants, Plaintiffs met and/or exceeded all of Defendants' legitimate expectations in the performance of their duties.

156.     As a result of the discriminatory treatment, Plaintiffs experienced a hostile work environment based on their disability and/or work place injuries.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

230.    At all relevant times, Defendants have subjected Plaintiffs to harassment that had the effect of unreasonably interfering with Plaintiffs' work performance and creating an intimidating, hostile or offensive work environment that seriously affected Plaintiffs' physical and/or psychological well-being. Plaintiffs were subjected to acts of harassment and discrimination because of their disability and/or work place injuries.

231.    Defendants' conduct is outrageous and malicious, was intended to injure Plaintiffs and was carried out with reckless indifference to Plaintiffs' protected civil rights, thereby entitling Plaintiffs to punitive damages.

232.    As a result, Plaintiffs are entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorneys' fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York State Executive Law.

## SIXTEENTH THROUGH TWENTY FIRST CAUSE OF ACTION DISABILITY DISCRIMINATION AND WORK PLACE INJURIES UNDER NYC ADMINISTRATION CODE

233.    Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if set forth in full herein:

234.    As stated above, Plaintiff Abreu suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

235.    As stated above, Plaintiff DeJesus suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

236.    As stated above, Plaintiff Fermin is a suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

- 32 -

INDEX NO. 26532/2017E

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 11/09/2017

237.    As stated above, Plaintiff Nunez suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

238.    As stated above, Plaintiff Rodriguez suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law § 296.

239.    As stated above, Plaintiff Estrella suffered a work related injury and/or disability and is therefore a protected employee under New York State Executive Law §296.

240.    At all relevant times, Defendants maintained a pattern and practice of unlawful discrimination on the basis of disability and/or work related injury.

241.    During the time Plaintiffs were employed by Defendants, the Defendant-Employer discriminated against Plaintiffs with respect to the terms, conditions and privileges of their employment because of their disability and/or work place injuries.

242.    The discrimination consisted of, *inter alia*, Defendants' failure to promote, afford equal terms and conditions of employment, harassment, unfair discipline, offensive racist remarks, disparate treatment and retaliation by Defendants, through their agents, servants and/or employees toward Plaintiffs.

243.    During the respective periods of Plaintiffs' employment with Defendants, Plaintiffs met and/or exceeded all of Defendants' legitimate expectations in the performance of their duties.

156.    As a result of the discriminatory treatment, Plaintiffs experienced a hostile work environment based on their disability and/or work place injuries.

- 33 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

244.      At all relevant times, Defendants have subjected Plaintiffs to harassment that had the effect of unreasonably interfering with Plaintiffs' work performance and creating an intimidating, hostile or offensive work environment that seriously affected Plaintiffs' physical and/or psychological well-being. Plaintiffs were subjected to acts of harassment and discrimination because of their disability and/or work place injuries.

245.      Defendants' conduct is outrageous and malicious, was intended to injure Plaintiffs and was carried out with reckless indifference to Plaintiffs' protected civil rights, thereby entitling Plaintiffs to punitive damages.

246.      As a result, Plaintiffs are entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorneys' fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York Administrative Law.

### TWENTY SECOND THROUGH TWENTY NINTH CAUSE OF ACTION BASED UPON RACE, COLOR AND NATIONAL ORIGIN RESULTING IN A DISPARATE IMPACT UPON HISPANIC EMPLOYEES UNDER NYS EXECUTIVE LAW AND NYC ADMIN. CODE

247.      Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if set forth at length.

248.      Defendants' employment policies and measures were motivated by considerations of race and/or color and/or national origin and in retaliation for Plaintiffs' exercise of their rights and complaints of perceived violations of law and regulations by Defendants.

- 34 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

249.     Defendants' treatment and/or selection of employees for promotion and application of such policies and measures was carried out without a fair, equitable or proper programmatic and functional analysis.

250.     By the aforementioned acts, Defendants Fairway was on notice that its practices and procedures violated various federal, state, and/or local statutes and/or regulations.

251.     As a result, Plaintiffs are entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorney's fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York State Executive Law.

### THIRTIETH THROUGH THE THIRTHY SEVENTH CAUSE OF ACTION
### UNDER NEW YORK LABOR LAW § 740

252.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if set from at length.

253.     By the aforementioned acts, Defendants Fairway violated Labor Law §740 which prohibits Employers from discharging, suspending, demoting or otherwise retaliating against an employee because the employee discloses to a supervisory or to a public body an unlawful activity, policy or practice of the Employer that creates and presents a substantial and specific danger to the public health and safety.

254.     As a result of Defendant's retaliation against them, Plaintiffs suffered damages, including without limitation, deprivation of income and benefits, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation, and damage to reputation and career.

- 35 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

255.    Defendant's conduct is outrageous and malicious, was intended to injure Plaintiffs and was carried out with reckless indifference to Plaintiffs' protected civil rights, thereby entitling Plaintiffs to punitive damages.

256.    As a result, Plaintiffs are entitled to front pay, back pay, compensatory damages, emotional distress damages, pecuniary damages, punitive damages, prejudgment and post judgment interest, attorneys' fees, costs of suit and such other relief as this Court may deem equitable and just and/or as allowed or permitted under the New York State Labor Law.

## THIRTY EIGHTH THROUGH FORTY FIFTH CAUSE OF ACTION
## UNDER NEW YORK LABOR LAW § 215

257.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if set form at length.

258.    By the aforementioned acts, Defendants' Fairway were on notice that its practices and procedures violated various federal, state, and/or local statutes and/or regulations.

259.    Plaintiffs' complaints of Defendant's violations resulted in retaliatory action taken against them culminating in their terminations in violation of N.Y.L.L. § 215.

260.    As a request of Defendant's retaliation against them, Plaintiffs suffered damages including, without limitation, deprivation of income and benefits, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation, and damage to reputation and career.

## FORTY THROUGH FIFTY THIRD CAUSE OF ACTION
## UNDER NEW YORK LABOR LAW § 190

261.    Plaintiffs reallege and incorporate below all facts alleged in the above paragraphs.

- 36 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

262.    By the aforementioned acts, Defendants Fairway failed to pay wages to the Plaintiffs in violation of N.Y.L.L. § 190.

263.    As a result of Defendant's action taken against them, Plaintiffs suffered damages including, without limitation, deprivation of income and benefits, loss of opportunity for advancement and promotion.

WHEREFORE, and for the foregoing reasons, Plaintiffs respectfully request this Court grant the following relief:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiffs' rights as secured by the New York State Human Rights Laws and the New York City Administrative Code, § 8-101, and the New York State Labor Law and;

(2) Grant Plaintiffs preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees, and those acting in concert with them and at their direction from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of race, color, national origin or disability with respect to compensation, terms, conditions and privileges of employment or from continuing or maintaining a policy, practice, custom or usage of denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of Plaintiffs to enjoy equal employment opportunities secured by law;

(3) Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation;

- 37 -

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E
RECEIVED NYSCEF: 11/09/2017

(4) Establish a mechanism for the enforcement of the injunctions by requiring the Defendants to present to the Court within 30 days of the issuance of the injunction, a plan showing precisely and in detail how they will comply with the Court's order and that they cease and desist from policies, practices, customs and usages of discrimination against Plaintiffs and other persons similarly situated;

(b) reimbursement for lost bonuses, health benefits, 401K contributions, pension, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial;

(5) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial,

(6) Liquidated damages in an amount to be proved at trial;

(7) Punitive damages in an amount to be proved at trial;

(8) Attorneys' fees, costs and disbursements;

(9) Prejudgment Interest; and

(10) Such additional relief to Plaintiffs as the Court deems just and proper.

Dated: November 9, 2017

THE CLANCY LAW FIRM, P.C.

By: _Donna H. Clancy_

Donna H. Clancy, Esq.

NYSCEF DOC. NO. 3

INDEX NO. 26532/2017E

RECEIVED NYSCEF: 11/09/2017

## VERIFICATION

STATE OF NEW YORK   )
                                 ss.:
COUNTY OF NEW YORK  )

     **DONNA H. CLANCY,** an attorney at law, duly admitted to practice in the Court

of the State of New York, affirms under the penalties of perjury, that:

     I am the attorney of record, for the plaintiffs, Ronald DeJesus, Jose Abreu, Renee

Rodriguez, Angel Rivera, Victor Fermin, Sergio De Los Santos and Dionicio Estrella.

That I have read the foregoing AMENDED VERIFIED COMPLAINT and know the

contents thereof, and upon information and belief, I believe the matters alleged therein to

be true.

     The reason this verification is made by deponent and not by the plaintiffs is that

the plaintiffs herein resides in a County other than the one in which the plaintiffs'

attorney maintains her office.

     The source of deponent's information and the grounds of belief here are

communications, papers, reports and investigations contained in the file.

Dated: New York, New York
        November 9, 2017

                                    The Clancy Law Firm, P.C.

                                    By: _Donna H. Clancy_
                                         Donna H. Clancy

INDEX NO. 26532/2017E

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 11/09/2017

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF BRONX                                    Index No.: 26532/2017E

-------------------------------------------------------------------------------------------

JOSE ABREU, SERGIO DE LOS SANTOS, RONALD DEJESUS, VICTOR FERMIN, LUIS
NUNEZ PERALTA,  ANGEL RIVERA, RENEE RODRIGUEZ and DIONICIO ESTRELLA

Plaintiffs,

-against-

FAIRWAY MARKET LLC,  FAIRWAY GROUP HOLDINGS, CORP, FAIRWAY CHELSEA,
LLC, FAIRWAY UPTOWN, LLC, FAIRWAY, WOODLAND PARK LLC, FAIRWAY
STAMFORD, LLC, ABC CORPORATIONS and JOHN DOES 1-10.

Defendants.

-------------------------------------------------------------------------------------------

## AMENDED VERIFIED COMPLAINT

-------------------------------------------------------------------------------------------

### THE CLANCY LAW FIRM, P.C.

Attorneys for Plaintiffs
40 Wall Street – 61st Floor
New York, New York 10005
(212) 747-1744

-------------------------------------------------------------------------------------------

To Service of a copy of the within is hereby admitted.

Dated: --------------------20-----

Attorneys for

-------------------------------------------------------------------------------------------

### PLEASE TAKE NOTICE:

NOTICE OF ENTRY                                                        that
          the within is a (certified) true copy of an Order duly entered
                     in the office of the clerk of the within named court

NOTICE OF SETTLEMENT                                                   that
and order    of which the within is a true copy will be presented for settlement to the HON.  one of the
                                    judges of the
                               within named Court, at
              On                    20     at              M.
                                    Dated,
                                   Yours, etc.

-----------------------------------------------------------------